IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WENFANG LIU,

                    Plaintiff,                              OPINION and ORDER

          v.
                                                           09-cv-500-wmc
TIMOTHY MUND,

                    Defendant.

---

After Wenfang Liu and Timothy Mund married in China, Mund asked immigration officials if Liu could become a permanent resident of the United States. In the process, he signed an affidavit promising to maintain Liu at 125% of the federal poverty level. After residency was granted to Liu, the parties moved to the United States. Within a few months, Liu and Mund separated and eventually divorced. Liu now finds herself living without the promised support and brings this lawsuit to enforce the terms of the affidavit pursuant to 8 U.S.C. § 1183a(c). Before the court is plaintiff's motion for partial judgment on the pleadings and for summary judgment, as well as defendant's motion for leave to amend his answer and add affirmative defenses. For the reasons that follow, defendant's motion will be denied and plaintiff's motion will be granted in substantial part.

## I.  Motion for Leave to Amend

Defendant seeks leave to amend his answer to include affirmative defenses "that are generally available in contract matters, but that were unknown to him when the parties to this action were pro se, such as failure of consideration, fraud, ambiguity, vagueness, failure to mitigate, unconscionability and other contract issues." (Def.'s Br., dkt. #48, at 1.) Fed. R. Civ. P. 15(a) provides that leave to amend "shall be freely given when justice so requires," but may

be denied "where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice . . . or where the amendment would be futile." *Hukic v. Aurora Loan Services*, 588 F.3d 420, 432 (7th Cir. 2009).

Defendant's request for leave to amend will be denied because the request was delayed unduly, and would unduly prejudice plaintiff at this stage of the proceedings. As plaintiff points out, defendant waited eight months from the time he filed an answer and seven months from the start of discovery before asking for leave to amend. While he acted pro se during a part of that period, his delay in obtaining counsel is his own fault, especially since he planned from the start to hire a lawyer, but took five months to do so. Moreover, Mund had a lawyer for two months before seeking leave to amend his answer to add standard contract defenses. Finally, defendant made this request one month after the dispositive motion deadline had passed and shortly before discovery closed, certainly knowing that any further delay would harm plaintiff.

Allowing an amendment at this late date would also inevitably postpone plaintiff's ability to obtain relief. In this case, that is important because plaintiff is seeking promised support from defendant and her annual income falls well below the poverty level.

Even if some delay were acceptable, defendant failed to submit a proposed amended answer for review. Instead, defendant provides a vague laundry list of proposed affirmative defenses "generally available in contract matters" and offers no factual basis for the proposed defenses, whether newly discovered or otherwise. Rule 8 requires a party to "state in short and plain terms its defenses"; Rule 9 requires a party "state with particularity the circumstances constituting fraud or mistake." Because defendant waited too long and offers no facts explaining his delay or supporting his additional, vaguely described defenses, his request for leave to amend will be denied.

To the extent defendant offers a factual basis for his defenses as part of his opposition to plaintiff's motion for summary judgment, however, they have been considered and generally been found wanting for the reasons explained below.

## II.  Motion for Judgment on the Pleadings and Summary Judgment

Along a similar vein as defendant's motion for leave to amend his answer, he argues halfheartedly that he needs more time to perform discovery on the summary judgment motion. "Halfheartedly" because he does not bother to file the required motion under Fed. R. Civ. P. 56(f) to dismiss or stay the summary judgment motion to allow the time he claims to need. Instead, defendant just responds to particular proposed findings of fact by stating that he "has not had enough time to complete discovery." (*See, e.g.*, Def.'s Resp. to Plt.'s Proposed Findings of Fact 37, dkt. #50, at 13 (fact regarding Liu's income)).  Even if defendant's responses could be considered under Rule 56(f), they would be insufficient.  Rule 56(f) requires that the nonmovant submit an affidavit that describes "specified reasons" why he is not ready to oppose summary judgment.  Defendant offers none.  In particular, he fails to explain why the previous seven months of discovery, much less the previous two in which he had a lawyer, were not enough time to complete sufficient discovery to respond to plaintiff's pending motion.  This is especially telling since most of the information necessary to dispute the motion should be in Mund's possession anyway.  As a result, in those instances in which defendant responds with nothing more than a lack of time, plaintiff's proposed findings of fact are accepted as true.

There is another fundamental shortcoming of defendant's responses to plaintiff's proposed findings of facts he purports to dispute:  defendant failed to submit evidence refuting or putting in issue most of those proposed facts.  Defendant was told at the outset of this lawsuit

that he needed to both provide his version *and* "refer to evidence that supports that version" to put a fact in dispute. (*Procedure to be Followed on Motions for Summary Judgment*, II.D.2, attached to October 2, 2009 Pretrial Conference Order, dkt. #16.) Defendant's version of disputed facts will, therefore, also be disregarded in those instances in which he failed to follow this rule.

Despite these fundamental shortcomings, defendant does cite to some admissible evidence, the most important of which is the state court divorce judgment. In ruling on the parties' divorce, the state court judge made factual findings about the parties' relationship and money provided Liu by Mund up to April 2009. (*See* Koop Decl., Apr. 14, 2010, dkt. #43, ex. 8 at 2.) Those factual findings, arising out of adversary proceedings between the parties in state court, are accepted as true by this court.[1]

## UNDISPUTED FACTS[2]

On September 12, 2005, plaintiff Wenfang Liu and defendant Timothy Mund married in China. On July 24, 2006, Mund completed and executed an immigration form known as the I-864 Affidavit of Support.[3] In the affidavit, Mund agreed to "provide [Liu] whatever support

---

[1] The divorce court's findings of fact, issued in a judgment reached after a court trial, precludes the parties from litigating those issues, such as what amounts of money Mund had provided Liu while they were separated, but before they were divorced. "Under the Full Faith and Credit Act, 28 US.C. § 1738, federal courts must give state court judgments the same preclusive effect they would have in state court." *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002).

[2] Drawn from plaintiff's proposed findings of fact and the record, the following facts are material and undisputed.

[3] Neither party proposes facts explaining why this form is filed. The record shows that Mund filed a form I-130 to ask for legal permanent resident status for his wife, and the filing of an I-864 form is a typical part of the process of pursuing that status.

is necessary to maintain [her] at an income that is at least 125 percent of the Federal poverty guidelines" until either Mund or Liu dies or Liu becomes a citizen, leaves the United States permanently or "can be credited with 40 quarters of work." (Dkt. #43-3, at 6.)  The affidavit includes a statement that Mund "submit[s] this affidavit of support in consideration of [Liu] not being found inadmissible to the United States." (*Id.*)  Under § 212(a)(4)(c) of the Immigration and Nationality Act, immediate relatives are generally inadmissible unless the person petitioning for the relative's admission has executed such an affidavit of support.

In the affidavit, Mund acknowledged "understanding that . . . this affidavit of support constitutes a contract between [Mund] and the U.S. Government" and that Liu is "entit[led to] sue [Mund] if [he] fail[s] to meet [his] obligations under this affidavit of support."  Immigration officials received the affidavit on July 26, 2006.

On October 15, 2007, Liu obtained her status as a legal permanent resident of the United States and Mund brought Liu to the United States.  On December 20, 2007, Liu and Mund separated, with Liu moving out of the home they were sharing.  On January 16, 2008, the parties reconciled and resumed living together until March 18, 2008, when the two separated permanently.

On July 18, 2008, Mund filed for divorce, and on July 5, 2009, a divorce certificate was issued.  Before the divorce was finalized, Mund made payments to Liu.  After a contested court trial, the judge presiding over the divorce allowed Liu to keep any cash and deposit accounts in her name and determined that Mund had paid her $10,000 in late December 2007, $1,134.76 in November 2008, and $1,000.00 in January 2009.  The judge treated these as support payments by Mund made while the parties were married, but separated.  In calculating future

maintenance, the judge imputed income of at least $6.50 per hour to Liu because Liu's job search "was not a steady one" and because  she was capable of finding a job.  As a result, the judge ordered Mund to pay Liu $500 a month in maintenance for one year and awarded her a lump sum of $5,000 to settle Liu's claim to marital property.  Ongoing maintenance payments were contingent upon Liu providing proof to Mund's attorney that she had sought at least one job a week during the maintenance period, starting April 2009.  Mund completed the year of maintenance without incident, paying Liu a total of $6,002 (21 maintenance payments of $230.77 in 2009 and five payments of $230.77 in 2010).[4]

Liu is still a non-citizen, permanent resident of the United States and she has not departed the United States.  Liu has not found work since the separation and did not earn any income aside from Mund's support and maintenance payments in 2008, 2009 or through April 14, 2010  (when plaintiff moved for summary judgment).  Based on the payments listed above, Liu received $11,134.76 in 2008;[5] $5,846.17 in 2009; and $1,153.85 through April 14, 2010. For each of the years at issue, 125% of the federal poverty level, pro-rated for periods during which Liu lived with Mund and up to the date of filing would have been:

- 2008: $10,756.16 (((302 days/365) x $10,400) x 125%);

- 2009: $13,537.50 ($10,830 x 125%); and

- 2010 through April 14: $3,857.26 (((104 days/365) x $10,830) x 125%).

---

[4]  Liu did raise in the divorce proceedings Mund's obligation to provide support pursuant to § 1183a, but the state court refused to consider that claim as a matter of "federal immigration law."

[5]  While Mund technically made the $10,000 payment on December 24, 2007, the state court applied it toward monthly support for 2008.  See discussion *infra*.

Without regard to any applicable, prejudgment interest, the total difference between the 125% pro-rated poverty level and Liu's actual income for those years is $10,394.74, based on a totaling of the following annual differences:

- 2008: – $378.60 ($10,756.16-$11,134.76);

- 2009: $7,691.33 ($13,537.50- $5,846.17); and

- 2010 through April 14: $2,703.41 ($3,857.26-$1,153.85).

OPINION

## A.  Liability

While a form I-864 affidavit is a contract between the sponsor and the United States Government, the sponsored immigrant may bring a lawsuit to enforce it as the named,third-party beneficiary.  8 U.S.C. §§  1183a(a)(1), (e); 8 C.F.R. § 213a.2(d).  If the sponsor fails to maintain the sponsored immigrant at or above 125% of the federal poverty level, the immigrant may pursue damages, an order for specific performance and payment of legal fees and other costs of collection.  8 U.S.C. § 1183a(c).

The undisputed facts make resolution of this case relatively straightforward.  In his answer, Mund did not deny the allegation that he had signed the form I-864 affidavit; nor does he attempt now to dispute the fact that he signed it.  Moreover, it is undisputed that Liu's income was below the federal poverty line during 2009 and 2010, since she received no income except maintenance from Mund, which ended altogether in April of 2009.

Five circumstances terminate a sponsor's support obligations under the statute and Mund's affidavit:  "(1) the sponsor dies; (2) the sponsored immigrant dies; (3) the sponsored

immigrant becomes a United States citizen; (4) the sponsored immigrant departs the United States permanently; or (5) the sponsored immigrant is credited with 40 qualifying quarters of work." *Skorychenko v. Tompkins*, 2009 WL 3126379, *2 (W.D. Wis. Sept. 28, 2009) (citing 8 U.S.C. § 1183a). None of these circumstances are present in this case. Both Mund and Liu are alive and Liu is a non-citizen permanent resident living in the United States who cannot be credited with 40 qualifying quarters of work. "Qualifying quarters" are counted (up to four each year) according to the amount of income a person receives in wages or self-employment income by three month increments. 42 U.S.C. § 413. Liu has not worked at all, let alone ten years.

Although Mund does not deny that he signed the affidavit and offers no evidence to suggest Liu is living at or above 125% of the federal poverty level, he contends that he is not liable for other reasons. In particular, Mund argues that there was no valid consideration for his promise to maintain Liu, that Liu did not get married for "legitimate reasons" and that Liu did not make an "honest attempt to mitigate her damages." None of these affirmative defenses appear in defendant's answer and, as explained above, they cannot be introduced at this late date. Even if it were proper to entertain these defenses, none would save defendant from summary judgment.

As to defendant's argument that there was no valid consideration for the promise to maintain Liu, the terms of the I-864 put that defense to rest. Mund states explicitly in the affidavit that he is making the promise "in consideration of [Liu] not being found inadmissible to the United States" and § 212(a)(4)(c) of the Immigration and Nationality Act requires such a promise as one of its many hurdles. Defendant points out that the submission of the affidavit

8

does not guarantee admission, or even a determination that the immigrant would not be a public charge. But this point is irrelevant. The affidavit is a *necessary* but not a sufficient condition of admissibility; the *chance* to be admitted is the consideration. Moreover, the government acted upon Liu's admission in part in reliance upon Mund's promise.

As for the remaining two defenses, they are supported by nothing but speculation. Defendant proposes no facts to support his contention that Liu entered into the marriage for illegitimate reasons, but assuming his statements in the brief could be considered, they are woefully inadequate. He cites his divorce trial brief alleging that Liu engaged in numerous acts of violence starting two years after the parties were married and points to the divorce court's finding that Liu wasted marital assets by "making charitable contributions to people she saw on the street." (Dkt. #43-9, at 3.) These behaviors suggest nothing about Liu's state of mind when she entered into the marriage. Even if they did, the place for Mund to challenge the legitimacy of the marriage itself was before the state court. He may not relitigate the validity of the parties' marriage here.

Defendant's argument that Liu failed to mitigate damages has more traction, particularly in light of the divorce court's finding that (1) Liu "is capable, both through past work experience and training and education, to provide for herself in a way that is consistent with the way these parties lived during marriage" and (2) Liu's "search process was not a steady one" before April 2009.

Defendant points to no controlling authority supporting his assertion that Liu is obligated to seek work to reduce Mund's obligation under § 1183(a), and the law on this matter remains unclear. *Compare Younis v. Farooqi*, 597 F. Supp. 2d 552, 556-57 n.5 (D. Md. 2009) (assuming immigrant had duty to mitigate damages, but noting that even unwillingness to work

might not relieve sponsor of liability in light of the "purpose of the affidavit–to ensure that an immigrant does not become a public charge."), *with Stump v. Stump*, 2005 WL 2757329, at *7 (N.D. Ind. Oct. 25, 2005) (concluding that duty to mitigate did not affect liability, but could affect damages because the duty is "a basic tenant of contract law").

The requirement under § 1183a that a sponsor promise to maintain the immigrant is set up not only to protect the immigrant from poverty, but also to protect the *government* from a public burden. Section 1183a(b) provides that when a sponsored alien receives public benefits as a result of the sponsor's failing to provide the promised support, the governmental entity may recoup those losses from the sponsor. If Mund could simply point back at Liu's failure to carry her part, government agencies seeking recoupment for benefits provided would risk taking a loss.

On the other hand, agencies have their own reasons for safeguarding against giving benefits to those who can provide for themselves and tend to do so. Moreover, the notion that an immigrant has a duty to mitigate damages not only seems fair, but is consistent with the notion of the plaintiff's status as a third-party beneficiary to a contract.

Whether or not Liu has a duty to mitigate is beside the point here, since her failure to mitigate is at most an affirmative defense, and Mund has wholly failed to plead the defense in a timely manner, much less adequately document the failure in response to Liu's motion for summary judgment. In particular, defendant proposed no facts related to his theory that Liu could have found a job after April 2009. Even crediting the state court's finding that Liu is "capable" of finding gainful employment and defendant's assertions in his brief that Liu has a high level of education, has worked in human resources and journalism in China, and is "capable of expressing herself in written English," defendant does not offer any evidence that Liu's inability to obtain employment from April 2009 to April 2010 is a function of her failure to look

or accept employment, rather than a function of the current recession, being viewed as over or under qualified for many available jobs, other individual shortcomings or some combination of all three.  For purposes of summary judgment, Mund's was not a high burden, but he nevertheless had a burden to present some evidence of Liu's refusal to seek and ability to obtain gainful employment.

Mund complains that Liu failed to submit proof of her efforts to look for work to his divorce lawyer as required by the consent decree.  There is, however, no indication he made *any* effort to seek enforcement of that decree, despite the divorce judgment permitting him to do so. More to the point, Liu did provide proof of her efforts on a timely basis to the guardian *ad litem* in the state proceeding.  And the documented, ongoing efforts to obtain work have been submitted here without dispute by Mund, except to criticize Liu for failing to aim higher in the quality of jobs sought.  In response to evidence of Liu's efforts to obtain "dozens" of jobs, Mund's speculation is simply not enough for a reasonable jury to find that Mund has met his burden of proof on mitigation.

## B.  Monetary Damages

Often the question of damages is one that must be sorted out by a jury, even when summary judgment is granted on liability, but not here.  The amount of income Liu had and the calculations required to determine the amount Mund owes her are straightforward.  The amounts she received up to the divorce judgment were determined by the state court judge presiding over the divorce and the amounts paid since that judgment are undisputed.

Liu contends that Mund failed to maintain Liu at or above 125% of the federal poverty line during 2008, 2009 and 2010.  She is correct with respect to 2009 and 2010 and, thus, entitled to the difference between the money she received and 125% of the federal poverty line during those years.  The state court's binding factual findings, however, establish that Mund kept Liu above 125% of the federal poverty line in 2008 and she is entitled to no additional money for that year.  Thus, the total amount Mund owes for 2008, 2009 and up to April 14, 2010, is $10,394.74.

Mund challenges the amount put forward by Liu--$20,016.14--by pointing out that Liu hoarded money from a 2003 sale of property and that he paid her $10,000 at the end of 2007. The former fact has been disregarded--it was mentioned only in a brief.  Even if that fact could be considered, however, it is irrelevant because at most it relates to Liu's income in *2003*, which is not in issue.  In 2003, the parties were not even married.

As has been explained, the December 24, 2007 payment is a different story.  In its April 2009 judgment, the state divorce court credited Mund with paying Liu $10,000.  Even though the payment was made in 2007, the divorce court credited the $10,000, as well as two, additional lump sums made later in 2008, as payment made by Mund in an effort to support Liu during the time they were married but living separately.  It is apparent on the face of the divorce judgement that the state court did not consider the $10,000 a part of the money necessary to equalize the marital property division, but rather as prepaid maintenance for the first ten months of 2008.  First, the $10,000 was included in the state court's findings regarding pre- and post-divorce support (Koop Decl., dkt. #43, ex. 8, ¶9(b)), while a separate $5000 was listed in the portion of the judgment addressing the division of marital property (*id.*, ¶13.).

Second, the judge did not require Mund to pay Liu any additional, past support, even though they had been separated for about a year.[6] Third, while Mund gave Liu the $10,000 on December 24, 2007, it was plainly used by her in the first ten months of 2008 (a time when she had no other income), so it should be counted as 2008 support from Mund.[7]

The remaining question is what additional monetary damages should be provided for the time between April 14, 2010, when plaintiff calculated her losses and the date of judgment. Plaintiff contends that the amount should be pro-rated as of the date of this decision. Defendant does not respond to this argument, perhaps because plaintiff's proposal makes sense. Since 2008, Liu has not earned any income other than maintenance from Mund, which has ended. There is no suggestion that Liu has received any income at least through April 14, 2010, nor that her employability has improved or ongoing efforts at employment have stopped. Thus, damages would indeed continue to accrue daily by the pro-rated value of the federal poverty level. This amount is $29.67 a day and 160 days (through today's date of 9/21/10) have passed since April 14, 2010, so the additional amount is $4,747.20.[8]

Still, the court needs some evidence that both are still true. Accordingly, plaintiff is currently entitled to damages of 10,394.74 and will be given ten days from the date of this order to submit a *sworn* affidavit to her income, employment efforts and employment, if any, since

---

[6] Requiring such payments would have been more than reasonable had the judge found that Mund simply left Liu to fend for herself without any support.

[7] Mund has not argued that the state judge's finding that Liu is capable of obtaining a job making at least $6.50 an hour should be imputed against the amount of her § 1183(a) payments and the court declines to make that argument for him except to say that the state court's finding, in combination with Liu's continuing failure to obtain *any* kind of work, may affect her right to future payments in the face of a properly pled and proven mitigation defense absent adequate explanation.

[8] The poverty guidelines for 2009 have been extended until the end of 2010, so the annual poverty level of $10,830 from 2009 is still the correct rate.

April 14, 2010; and defendant is given ten days from submission of that affidavit to dispute the affidavit or the appropriate pro rata calculation.  If plaintiff can show that she remains without income and continues to make reasonable efforts to seek work, she will be entitled to the additional $4,747.20.

## C.  Specific Performance

Liu also requests specific performance, a remedy available in her circumstances.  8 U.S.C. § 1183a(c).  A request for specific performance is nevertheless a "positive injunction," meaning it is a request for equitable relief.  *Chicago United Industries*, 445 F.3d 940, 945 (7th Cir. 2006).  Thus, "according to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief:  (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  In addition, because the requested performance is a remedy relating to a contract, the terms of the contract must be sufficiently specific to allow the precise drafting of an order for specific performance.  *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 637 (7th Cir. 2007).  Aside from these requirements, Fed. R. Civ. P. 65(d) explains that for every order granting an injunction, the court must state the reasons for granting the injunction, state the terms of the injunction specifically and "describe in reasonable detail . . . the act or acts restrained or required."

14

Applying this fairly rigid standard, Liu's request for specific performance will be denied at this juncture. Plaintiff did very little to show she is entitled to an order for specific performance. She simply points out that the statute identifies it as an available remedy, points out that defendant has failed in the past to fulfill his obligations and asks that he be "ordered on a monthly basis to pay one-twelfth of 125% of the Federal poverty level, until" one of the five possible grounds for terminating the obligations occurs. (Dkt. #41, at 17.)

While defendant also failed to address plaintiff's cursory arguments for specific performance, the decision to order specific performance is a question of equity and there are reasons to wait before imposing such a burden on Mund. This is the first court order telling Mund that he cannot escape the obligations set forth in his affidavit of support and imposed by § 1183(a). The present order alone may persuade Mund that he cannot avoid his obligation to support Liu. Because the statute allows Liu to collect her reasonable attorney fees, Mund is likely to realize that avoiding his obligations and fighting through a lawsuit can be substantially more expensive than meeting his ongoing payment obligations. Of course, if Mund has not learned his lesson, Liu can seek to reopen or file another lawsuit in which only changed circumstances would allow for a different outcome. In such a case, Liu's argument for specific performance would obviously be more persuasive, provided she can withstand Mund's scrutiny regarding her ongoing employment efforts.

Finally, plaintiff requests fees and costs allowed under § 1138a(c). If she wants to pursue those costs, she must file a proper motion for fees and costs pursuant to Fed. R. Civ. P. 54(d). That issue will be considered after such a motion has been fully briefed.

15

ORDER

IT IS ORDERED that:

(1)     Defendant Timothy Mund's motion for leave to amend his answer, dkt. #48, is DENIED.

(2)     Plaintiff Wenfang Liu's motion for partial judgment on the pleadings and for summary judgment on her claim for monetary damages, dkt. #41, is GRANTED.

(3)     Defendant owes plaintiff $10,394.74.

(4)     Plaintiff shall have ten days to file a sworn affidavit to her income, employment efforts and employment, if any, since April 14, 2010; and defendant shall have ten days from submission of that affidavit to dispute the affidavit or the appropriate pro rata calculation.

(5)     Plaintiff's request for specific enforcement of the I-864 Affidavit of Support executed by defendant Timothy Mund, dkt. #41, is DENIED.

(6)     The clerk of court is directed to enter judgment in plaintiff's favor as set forth above and close this case absent further submissions by either party within 30 days of this order.

Entered this 21st day of September, 2010.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge